COMMONWEALTH of Kentucky, DEPART-
MENT OF MILITARY AF-
FAIRS, Appellant,

v.

G. E. KINDER, Appellee.

Court of Appeals of Kentucky.

May 29, 1964.

John B. Breckinridge, Atty. Gen., Robert L. Montague, Asst. Atty. Gen., for appellant.

J. W. Jordan, Barbourville, for appellee.

MOREMEN, Judge.

Appellant, Commonwealth of Kentucky, Department of Military Affairs, filed a complaint to quiet title to a tract of property situated in Barbourville. This property had been deeded by the City to the Commonwealth. The deed contains these calls, running from a corner of Granville Kinder, the adjoining owner: "thence N 49 degrees 43' W along Kinder line 213 feet to a post; thence N 48 degrees E along fence line 210 feet to a Concrete Monument of the Flood Wall R/W." Kinder's deed does not have a similar call, so far as we have been able to determine from the record before us. It is the location of this boundary line that is the cause of the controversy.

Appellee counter-claimed, described the deed under which he held title and further pled that the lot he owned had been under fence, cultivation and use by himself and predecessors in title for a period of over forty years. The pleading is not in the best form but we believe it sufficient to apprise the plaintiff of the issue.

At the trial the Commonwealth introduced A. V. Seay, a surveyor, who testified that from the Commonwealth's deed he was able to tell where Kinder's property line lay and that there was no over-lap of the property owned by the Commonwealth and Mr. Kinder. He testified that he did not see a fence along this line. He did, however, testify that since there was no natural line, he consulted with Mr. Kinder about the location of the division line. Mr. Kinder produced his deed and said, "This is all I own." Mr. Seay prepared a map which is filed as an exhibit, but the disputed strip is not marked. J. W. Newland, who was superintendent of construction in the building of the National Guard Armory on a portion of the State's land, testified that his blueprints called for the utilization of a portion of the land which abuts on appellee's property and that they cleared out this portion which contained bush and other undergrowth. They cleared the strip with bulldozers in order that it might later be blacktopped. He further testified:

"Q. Now, you say there wasn't any fence at all, metal fence or wire fence or anything? A. No, sir, I don't remember one.

"Q. No posts or anything? A. I don't remember.

"Q. Nothing of that kind there? A. Not that I recall.

"Q. There was some indication there had been a fence? A. Might have been. There were trees which might have been. Seems as if somebody had put in agriculture, corn or a garden spot north of that brush.

"Q. Well, that is where the dispute is about, isn't it Mr. Newland? A. I really don't know.

Appellee's claim to the disputed strip of land was based upon the assertion that for many years the division line between the properties had been marked by a stout fence. Appellee testified that he had purchased this property in 1943, and had lived on it for about ten years after that date and that a fence line ran from Manchester Avenue to the floodwall. The posts were either locust or chestnut to which were stranded four or five barbed wires. He also testified that bushes and trees had grown up around the fence and that when the State began construction of the armory, it had torn down the fence and had taken possession of a twenty foot strip of his land.

K. W. Jordan, Knox County Surveyor, testified that he had tried to establish the disputed corner as established by the deeds, but had failed because some of the land had been taken when the street was widened and when the floodwall right-of-way had been obtained. He could not state definitely where the boundary lines were although he did find a wire fence which had been pushed down.

Steve Brock, who had rented Kinder's property for six or seven years, testified that it was well-fenced when he had cultivated the land. He stated that he saw the fence there a short time before the State started construction.

John Shorter testified that he had known this property for about thirty years and that he had worked on it. He was acquainted with the fence which separated Kinder's property from the adjoining property, and estimated that the fence had been there for about twenty-five or thirty years.

Jess Hammons, who had known the property in question for thirty-five years, stated that the fence between the two tracts of land had been there for thirty-five years and until the State removed it. He knew that the fence line had been claimed to be the property line for thirty-five years and that Kinder's land had been farmed and cultivated up to the fence every year.

Affidavits by Aaron Cupp, Elmer Treadway and Jess Fisher all verified the foregoing statements. Fisher testified that he had cultivated the land adjoining the Kinder property, now owned by the State, up to the fence of G. E. Kinder.

■ We are of opinion that the court was correct in adjudging the fence, which was destroyed by appellant during the construction, to be a well-known and long-recognized dividing line between the properties and that appellee and his predecessors in title had been in actual possession and control of the property to the fence line for about forty years. The possession was adverse, notorious and hostile. See: Mudwilder v. Claxton, Ky., 301 S.W.2d 3.

■ It is argued that the judgment should "be reversed because it fails to give the parties sufficient guides to actually establish the boundary in dispute." The judgment reads:

"It is therefore ordered and adjudged by the court that the division and boundary line between plaintiff's and defendant's property as set out in the complaint is hereby located and established where the old fence was standing and existing at the time it was destroyed by the plaintiff."

Appellee's evidence was certain as to the location of the fence. Appellant's witnesses denied the existence of the fence at the time they examined the property, but everyone knew the location of the line where appellee claimed the fence stood. It seems to us that it will require little ingenuity to follow the old fence row.

Judgment affirmed.